In re J. FIFE SYMINGTON, III, Debtor.

Bankruptcy No. 96–504–JS.

United States Bankruptcy Court,
D. Maryland.

June 10, 1997.

John A. Scaldara, Scaldara & Potler, L.L.P., Baltimore, MD, Frank G. Long, Sean P. O'Brien, Gust Rosenfeld, Phoenix, AZ, for Phoenix Newspaper, Inc. & KTVK–TV Newschannel 3.

Jervis S. Finney, Glena T. Brizan, Ober, Kaler, Grimes & Shriver, P.C., Baltimore, MD, for Estate of Martha F. Symington.

Michael C. Manning, Jeffrey J. Goulder, Kristin L. Farnen, Phoenix, AZ, for Bank of America Arizona.

Robert A. Shull, William Novotny, Mariscal Weeks, McIntyre & Friedlander, P.A., Phoenix, AX, for debtor.

JAMES F. SCHNEIDER, Bankruptcy Judge.

*MEMORANDUM OPINION GRANTING MOTIONS OF PHOENIX NEWSPAPERS, INC., AND KTVK–TV TO INTERVENE, TO SUBSTITUTE PERSONAL REPRESENTATIVE, AND TO STRIKE CONSENSUAL PROTECTIVE ORDER*

The question presented in this case is whether this Court should have entered a consensual protective order pursuant to Federal Rule of Civil Procedure 26 preserving the confidentiality of private financial documents of the debtor's mother that were subpoenaed pursuant to Federal Rule of Bankruptcy Procedure 2004. Representatives of the news media moved to intervene to dissolve the protective order as an overbroad prior restraint. While this opinion was being written, the debtor's mother died, and the news media filed a motion to substitute her personal representative, which he opposed. To date, no documents have been produced. The parties contend that the controversy is not moot and have requested this Court to issue a decision.

The motion to intervene will be granted because the press has standing to petition for access to materials closed to public view by a protective order. The decedent's personal representative will be substituted in her place so that a party respondent may be subject to this Court's order to turn over the requested documents.

The consensual protective order will be dissolved because it was not entered for good cause shown. In the opinion of this Court,the protective order should not have been entered because the press and the public should have access to the non-privileged financial information of the debtor's mother, alleged to conceal assets of bankruptcy estate of the debtor.

This opinion holds that the press and public are entitled to attend Rule 2004 examinations because such examinations were historically public proceedings and because public access plays significant role in the bankruptcy process. In also holding that:

the news media has a right to view the fruits of a document production pursuant to Rule 2004, the Court concludes that "the overriding public interest" in learning the facts about criminal misconduct allegedly committed by a debtor while currently serving as the Governor of Arizona, constitutes such "extraordinary circumstances" that outweigh the interests of the debtor and his mother in preserving the confidentiality of her personal financial records.

## FINDINGS OF FACT

On September 20, 1995, the debtor, J. Fife Symington, III, filed a voluntary Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the District of Arizona (Case No. 95–08397–PHX–GBN). Mr. Symington is the Governor of the State of Arizona. On January 10, 1996, the Bank of Arizona, as custodian of various pension funds, filed a motion in the debtor's bankruptcy case against Martha F. Symington, the debtor's mother, for the production of documents pursuant to Federal Rule of Bankruptcy Procedure 2004.[1] On February 6, 1996, the U.S. Bankruptcy Court for the District of Arizona [George B. Nielsen, Jr., B.J.] entered an order granting the motion. On February 8, 1996, the Bank of Arizona obtained a subpoena from the U.S. Bankruptcy Court for the District of Maryland directing the debtor's mother, Martha F. Symington, a Maryland resident, to produce certain designated categories of documents. The enumerated documents demanded by the subpoena are set forth in Appendix I.

Mrs. Symington advised the Bank that she believed that the documents that were responsive to the subpoena contained certain confidential information regarding her personal financial affairs and the private affairs between herself and the debtor. On May 22, 1996, the Bank of Arizona and Mrs. Symington filed a joint motion to approve a stipulation and protective order [P. 1] in the U.S. Bankruptcy Court for the District of Maryland at Baltimore. The order represented a negotiated agreement between the parties that provided for the confidentiality of Mrs. Symington's private papers while assuring the Bank access to information it needed relative to the debtor's bankruptcy case. The order also provided the opportunity to modify the order if the Bank should later conclude that the protective order was too broad. On May 23, 1996, this Court execut-

---

1. The memorandum in support of the motion contained the following factual averments:

 The Pension Funds ask that Martha Symington, the Debtor's mother, produce documents relating to certain financial dealings between her and the Debtor. These documents are essential to a complete examination of the Debtor's affairs and financial condition, including, but not limited to, determining whether certain payments made to Martha Symington are rightfully property of the Debtor's bankruptcy estate; determining the extent to which the Debtor and his spouse have commingled or transmuted their allegedly separate estates; determining whether the Debtor has engaged in fraudulent transfers; and determining the Debtor's right to a discharge.

 The Pension Funds have limited their request of Martha Symington to certain discrete issues which relate to evidence already unearthed in this case. For example, in 1994, Martha Symington received a $500,000 payment from Shimizu Land Corporation ("Shimizu") or a related entity at the same time the Debtor relinquished his interest in certain real estate partnerships to Shimizu. The Pension Funds believe that neither Debtor nor Martha Symington had any equity value in the partnerships or the properties which were the subject of that transaction with Shimizu. (Footnote:

Indeed, in Debtor's May 1991 financial statement, prepared by Coopers & Lybrand, Debtor is reported to have a multimillion dollar *negative equity* interest in the Esplanade and Scottsdale Seville projects.) The Pension Funds are concerned that the $500,000 received by Martha Symington in 1994 may have been a disguised payment to Debtor. The Pension Funds are entitled to explore why this payment was not made to the Debtor, but was instead made to his mother.

Martha Symington also loaned $1.5 million to the Debtor, which was ultimately satisfied through an arrangement between the Debtor's mother and his wife. This is but one example, albeit a very significant one, of the Debtor's spouse satisfying the Debtor's obligations. The Pension Funds should be permitted to probe the details of this transaction to accumulate evidence concerning whether the Debtor and his wife truly maintain separate estates as they claim.

The Pension Funds also have concerns that the Debtor may have placed assets in his mother's name in order to shield them from creditors. This is another area which is appropriate for further discovery. . . .

Memorandum appended to Motion for Order Directing Bankruptcy Rule 2004 Examination and for Production of Documents to Martha Symington. Ex. A to Joint Post Hearing Memorandum [P. 11].

ed the stipulation and protective order [P. 3], which is set forth in its entirety as Appendix II.

On June 4, 1996, KTVK–TV, NewsChannel 3, a Phoenix, Arizona television station, and Phoenix Newspapers, Inc., the publisher of *The Arizona Republic* and *The Phoenix Gazette*, filed the instant motion to intervene to overturn the stipulated protective order [P. 5]. Mrs. Symington filed an opposition to the motion, and a hearing was held on July 8, 1996. Meanwhile, on June 13, 1996, a Federal grand jury in Phoenix indicted the debtor, J. Fife Symington, III, on charges of extortion, making false statements and bankruptcy fraud, while holding office as Governor of Arizona. On July 12, 1996, Wells Fargo Bank, successor custodian to the Bank of Arizona, filed a complaint against the debtor in the U.S. Bankruptcy Court for the District of Arizona to determine the dischargeability of a debt based upon the debtor's conversion of certain pension funds.

During the preparation of this opinion, the Court was informed that Martha F. Symington died on November 26, 1996. To date, there has been no production of documents pursuant to the Rule 2004 order or the protective order at issue. On April 29, 1997, Phoenix Newspaper, Inc., and KTVK–TV NewsChannel 3 filed a motion [P. 13] to substitute Thomas D. Washburne, Mrs. Symington's personal representative, in her place. Mr. Washburne objected to the substitution, arguing that "the subject dispute between Movant and Respondent does not constitute a contested matter for purposes of Rule 9014 ... because this dispute exists solely between two non-debtor-non-creditor parties, not involving the administration of the bankruptcy estate." ¶ 6 Answer of Personal Representative [P. 14].

## CONCLUSIONS OF LAW

### HISTORY AND NATURE OF BANKRUPTCY EXAMINATIONS

 "The sweeping general examination" of debtors and others to recover assets and uncover fraudulent conduct is a traditional feature of bankruptcy jurisprudence that is traceable to the first bankruptcy statute enacted by the English Parliament more than 450 years ago.[2] 5 *Remington on Bankruptcy* § 1979 (1953 ed.). The current provision that authorizes a general examination bankruptcy is set forth in Federal Rule of Bankruptcy Procedure 2004, pursuant to which the Bank of Arizona sought the production of documents from Mrs. Symington. The rule provides in pertinent part as follows:

*(a) Examination on Motion.* On motion of any party in interest, the court may order the examination of any entity.

*(b) Scope of Examination.* The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge....

*(c) Compelling Attendance and Production of Documentary Evidence.* The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

Fed. R. Bankr.P. 2004(a), (b) and (c).

### PURPOSE AND SCOPE OF EXAMINATIONS PURSUANT TO FEDERAL RULE BANKRUPTCY PROCEDURE 2004

Rule 2004 has been termed "the basic discovery device used bankruptcy cases," permitting the examination of any party without the requirement of a pending adversary proceeding or contested matter. *In re French*, 145 B.R. 991, 992 (Bankr.D.S.D.1992). Rule 2004 necessarily permits a broad investiga-

2. "The first English bankruptcy statute was enacted in 1542, during the reign of Henry VIII, and gave to the Lord Chancellor of England and other members of the Privy Council the power to summon for examination persons indebted to, or holding property owned by, the bankrupt.... Unfortunately, historical research to date does not seem to have revealed whether the examination of witnesses was or was not conducted in public[.]" *The Baltimore Sun Co. v. Astri Investment Management & Securities Corp. (In re Astri Investment, Management & Securities Corp.)*, 88 B.R. 730, 737 (D.Md.1988) (citing 34 and 35 Hen. VIII, ch. 4).

tion into the financial affairs of debtors to assure the proper administration of bankruptcy estates. *In re GHR Energy Corp.,* 33 B.R. 451 (Bankr.D.Mass.1983); *Bank One, Columbus, N.A. v. Hammond (In re Hammond),* 140 B.R. 197 (S.D.Ohio 1992). Its obvious purposes are the discovery of assets of the estate and the exposure of fraudulent conduct. *In re Foerst;* 93 F. 190 (S.D.N.Y. 1899).

## BANKRUPTCY EXAMINATIONS PREDATED DISCOVERY UNDER THE FEDERAL RULES

The Federal Rules of Civil Procedure became effective on September 16, 1938. The rules revolutionized Federal civil trial practice by making pretrial discovery an essential part of litigation in the U.S. district courts.[3]

## DIFFERENCES BETWEEN RULE 2004 EXAMINATIONS AND PRETRIAL DISCOVERY UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

■ A Rule 2004 examination is a bankruptcy proceeding, undertaken upon the express authorization of a bankruptcy court. It represents a threshold inquiry into the assets and conduct of debtors bankruptcy. As an investigatory tool, its nature is inquisitory rather than accusatory, although information discovered by its employment may presage litigation.

■ The most significant difference is timing. A Rule 2004 examination is undertaken *prelitigation,* that is, before the filing of a lawsuit or motion, whereas discovery in the context of the Federal Rules of Civil Procedure is *pretrial,* that is, after the filing of a complaint or motion, but before a hearing on dispositive motions or trial on the merits. A Rule 2004 examination may even be conducted in the absence of a pending adversary proceeding or contested matter, although it obviously requires the pendency of a bankruptcy case.[4] Because it is normally requested before the filing of a complaint or contested matter, and indeed is independent of a complaint or contested matter, the examination need not be tied to specific factual allegations at issue between parties to a complaint or contested matter. For this reason alone, the bankruptcy examination is subject to fewer objections on grounds of relevance than would burden discovery filed in a lawsuit or contested motion. It is also less costly to the movant because it does not require the filing of an underlying adversary proceeding or contested matter.

■ Because the Rule 2004 examination is not conditioned upon the filing of an adversary proceeding or motion, it can be undertaken more quickly than regular civil discovery. While the Rule 2004 examination is normally authorized by the bankruptcy court without advance notice, this does not deprive the prospective deponent of the right to object after the motion is granted or to file a motion for protective order.

■ Despite its characterization as being tantamount to a "fishing examination," *In re Foerst,* 93 F. 190, 191 (S.D.N.Y.1899), a Rule 2004 examination must be both relevant and reasonable. *Snyder v. Society Bank,* 181 B.R. 40 (S.D.Tex.1994), *aff'd* 52 F.3d 1067 (5th Cir.1995); *In re Table Talk, Inc.,* 51 B.R. 143 (Bankr.D.Mass.1985); *In re Mittco, Inc.,* 44 B.R. 35 (Bankr.E.D.Wis.1984);

---

**3.** "The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. . . . The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized

privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor,* 329 U.S. 495, 500–501, 67 S.Ct. 385, 388–389, 91 L.Ed. 451, 457 (1947).

**4.** *See The Baltimore Sun Co. v. Astri Investment Management & Securities Corp. (In re Astri Investment, Management & Securities Corp. ),* 88 B.R. 730, 736 (D.Md.1988) ("A bankruptcy case is a civil proceeding conducted under the supervision of the district court ... A bankruptcy 'case' commences with the filing of a bankruptcy petition; a bankruptcy 'proceeding' includes any event in the bankruptcy case.").

*Keene Corp. v. Johns–Manville Corp. (In re Johns–Manville Corp. )*, 42 B.R. 362 (S.D.N.Y.1984). "Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr.E.D.N.Y.1991) (citing *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr.S.D.N.Y.1991)). Thus the scope of a Rule 2004 examination is at least as broad as discovery under the Federal Rules of Civil Procedure and subject to the same limitations.[5]

 The authorization to conduct prelitigation discovery under Rule 2004 belongs exclusively to the movant. The examinee has no reciprocal right to make a discovery demand upon the movant. On the other hand, discovery conducted in a contested matter or adversary proceeding under Federal Rule of Civil Procedure 26 is not dependent upon an order of court to authorize it, but is freely available to all parties to the controversy, who often agree to exchange information in advance of trial. "The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the F.R.Bankr.P. 7026 *et seq*, rather than by a Fed.R.Bankr.P. 2004 examination." *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr.N.D.N.Y.1996) (citations omitted). *See In re Bakalis*, 199 B.R. 443 (Bankr. E.D.N.Y.1996); *Sweetland v. Szadkowski (In re Szadkowski)* 198 B.R. 140 (Bankr.D.Md. 1996); *In re French*, 145 B.R. 991, 992 (Bankr.D.S.D.1992); *In re Ecam Publications, Inc.*, 131 B.R. 556 (Bankr.S.D.N.Y. 1991); *Intercontinental Enterprises, Inc. v. Keller (In re Blinder, Robinson & Co., Inc. )*, 127 B.R. 267 (D.Colo.1991); *In re Valley Forge Plaza Associates*, 109 B.R. 669 (Bankr. E.D.Pa.1990); *Moore v. Lang (In re Lang )*, 107 B.R. 130 (Bankr.N.D.Ohio 1989); *First Financial Savings Association v. Kipp (In re Kipp )*, 86 B.R. 490 (Bankr.W.D.Tex.1988). *Cf. Matter of Sutera*, 141 B.R. 539 (Bankr. D.Conn.1992) (where neither adversary proceeding nor contested matter was pending, Federal Rules of Civil Procedure did not preclude trustee from using Rule 2004 to examine creditor regard its claim); *Matter of M4 Enterprises, Inc.*, 190 B.R. 471 (Bankr. N.D.Ga.1995) (debtor was permitted to take Rule 2004 examination of Chapter 7 trustee despite the pendency of an adversary proceeding brought by the debtor against the trustee because trustee's fidelity as a fiduciary was called into question); and *In re Buick*, 174 B.R. 299 (Bankr.D.Colo.1994) (after the commencement of an adversary proceeding, the plaintiff may properly conduct Rule 2004 examinations of other non-party entities on issues beyond those implicated in the adversary).

## PROTECTIVE ORDERS [6]

Protective orders produce the intended results of preventing a party from obtaining certain information by means of discovery, and/or preventing parties who have obtained such information from disseminating the information to others. The protective order in the instant case had both effects.

There is a considerable difference of opinion among the reported decisions regarding whether the issuance of a protective order

---

**5.** *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 507–508, 67 S.Ct. 385, 392, 91 L.Ed. 451, 460 (1947):

We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case.... But discovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. *Id.*

**6.** The subject of protective orders and access to protected discovery is well-treated in Patrick S. Kim, *Third–Party Modification of Protective Orders Under Rule 26(c)*, 94 Mich. L.Rev. 854 (Dec. 1995); Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L.Rev. 427 (Dec.1991); Jacqueline S. Guenego, *Trends in Protective Orders Under Federal Rule of Civil Procedure 26(c): Why Some Cases Fumble While Others Score*, 60 Fordham L.Rev. 541 (Dec.1991); and Katherine Wiesepape Pownell, *The First Amendment and Pretrial Discovery Hearings: When Should the Public and Press Have Access?* 36 UCLA L.Rev. 609 (Feb. 1989).

limiting a Rule 2004 examination is governed by Federal Rule of Civil Procedure 26. For cases holding that Rule 26 governs, see *In re Mittco, Inc.*, 44 B.R. 35, 38 (Bankr.E.D.Wis. 1984) ("protective order under some circumstances may be granted in accordance with Rule 26(c) of the Federal Rules of Civil Procedure 'for good cause shown'"); *In re Clearview Concrete Products, Inc.*, 23 Collier Bankr.Cas.2d 373, 377 (Bankr.E.D.N.Y.1980) (citing *Freeman v. Seligson*, 405 F.2d 1326, 1333–1335 (D.C.Cir.1968)) ("Federal Rules of Civil Procedure in general, and more specifically Rule 26 (General Provisions Governing Discovery), Rule 30 (Depositions Upon Oral Examinations), Rule 34 (Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes), and Rule 45 (Subpoena), have been held to apply in examinations and requests for production of documents under [former] Rules 205, 734 and 11–26 of the Rules of Bankruptcy Procedure."). *See also Herron v. Blackford*, 264 F.2d 723, 725 (5th Cir.1959) (F.R.Civ.P. 45 authorizes a bankruptcy court to limit production of documents demanded from third parties by a trustee pursuant to bankruptcy examination); *In re Autocue Sales & Distributing Corp.*, 151 F.Supp. 798 (S.D.N.Y.1957) (bankruptcy examination is in the nature of discovery and therefore the Federal discovery rules apply).

The case of *In re Apex Oil Co.*, 101 B.R. 92 (Bankr.E.D.Mo.1989), held that because an objection had been filed to the motion for Rule 2004 examination, a contested matter was thereby created to which the Federal Rules applied by reason of Federal Rule of Bankruptcy Procedure 9014. This would suggest a contrary result in a case where no objection was filed to a Rule 2004 motion.

Other courts have held that because a Rule 2004 examination is completely different from discovery under the Federal Rules, in that it is much broader and subject to fewer procedural safeguards, it is not governed by Federal Rule 26. "[I]t does not offer the procedural safeguards available under the Federal Rules of Civil Procedure made applicable to discovery under Rule 9014." *In re Dinubilo*, 177 B.R. 932, 939 (E.D.Cal.1993). The leading case for this proposition appears to be *In the Matter of duPont Walston Inc.*, 4 Bankr.Ct.Dec. 61 (Bankr.S.D.N.Y.1978), which held that in a bankruptcy examination under Section 21(a) of the former Bankruptcy Act, the deponent was not entitled to counsel, not entitled to object to improper and unfair questions, and not entitled to cross-examination. The decision is suspect because it was based upon cases predating the promulgation of the Federal Rules of Civil Procedure. Research indicates that even under the former Bankruptcy Act, the Federal Rules were applied to bankruptcy examinations. *See 2 Collier on Bankruptcy* ¶¶ 21.02, 21.24–21.26, 21.34 (14th ed.1976). It is noted that since the promulgation of the Federal Rules of Civil Procedure in 1938, bankruptcy examinees have been afforded the same rights and procedural safeguards available to deponents in Federal pretrial discovery, including the right to have counsel present, if one has been engaged, the right to object to unfair or misleading questions and the right to be cross-examined. These rights insure fairness and also aid the examiner in ascertaining the truth. A witness who takes an oath to render truthful testimony enjoys the same protections available to witnesses in other Federal proceedings, including the right to assert privileges.[7] If a deponent provides

7. While Rule 2004 examinations are subject to claims of privilege, *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), the existence of a particular privilege is "governed by the principles of the common law as they may be interpreted by the courts of the United States" or "in accordance with State law." Fed.R.Evid. 501. *See* Fed. R. Bankr.P. 9017; Fed.R.Evid. 1101(a) and (c); *In re French*, 162 B.R. 541 (Bankr.D.S.D.1994); *In re Oxford Royal Mushroom Products, Inc.*, 41 B.R. 863 (Bankr.E.D.Pa. 1984); *In re Blier Cedar Co., Inc.*, 10 B.R. 993 (Bankr.D.Me.1981); *Matter of Mori*, 1 B.R. 265 (Bankr.S.D.Fla.1979); Russell, *Bankruptcy Evidence Manual* § 501.3 (1997 ed.). A number of opinions have considered and overruled claims of privilege raised in opposition to motions for Rule 2004 examinations. *See McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924) (privilege against self-incrimination); *In re Duque*, 177 B.R. 397 (Bankr.S.D.Fla.1994) (attorney-client and attorney's work product, self-incrimination, Right to Financial Privacy Act); *In re French*, 162 B.R. 541 (Bankr.D.S.D.1994) (attorney-client privilege); *Longo v. McLaren (In re McLaren)*, 136 B.R. 705 (Bankr.N.D.Ohio

testimony subject to a privilege without a knowing waiver, it may be inadmissible in a later proceeding. Testimony contained in the transcript of a Rule 2004 examination is often introduced at subsequent trials for the purposes of denial of discharge, impeachment of testimony, and prosecution of criminal offenses, including perjury. Witnesses whose testimony may have such far-reaching consequences to themselves and others ought to be aware of their legal and constitutional rights, while being afforded every opportunity to tell the whole truth. While the *scope* of the Rule 2004 examination should not be limited by whether the information sought to be discovered would be admissible at trial, otherwise admissible testimony taken during a Rule 2004 examination might not be admissible unless a showing could be made that the examination was conducted fairly and in compliance with the Federal Rules of Civil Procedure. *Cf. 2 Collier on Bankruptcy* ¶ 21.15[2] (14th ed.1976).

*In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376 (Bankr.N.D.Ill. 1996), is the latest case to hold that the Federal Rules of Civil Procedure are inapplicable to the granting of Rule 2004 protective orders. In that case, Bankruptcy Judge Erwin I. Katz held that the bankruptcy court had no discretion to refuse to enter a stipulated protective order to preserve the confidentiality of trade secrets and other commercial financial information when requested to do so pursuant to Section 107 and Bankruptcy Rule 9018. In that context, the court held that the requirement of "good cause" set forth in Federal Rule 26(c) was not the proper standard for issuing a Rule 2004 protective order, and that the Federal discovery rules did not apply in the absence of a pending adversary proceeding or contested matter.

This Court is in agreement with Judge Katz's proposition that the requested protective order should have been entered in that case pursuant to Bankruptcy Rule 9018.[8] The problem comes with his leap to the seemingly logical conclusion that Federal Rule 26(c) can never be the basis for a Rule 2004 protective order. He posits the broad issue as "whether, in the light of the Seventh Circuit holding in *Jepson, Inc. v. Makita Electric Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994), a bankruptcy judge should enter a stipulated protective order without a showing of good cause." 199 B.R. at 378. The fallacy is that in some cases that do not involve confidential commercial data or trade secrets, there might nevertheless be a compelling need to issue a protective order "for good cause shown" pursuant to F.R.C.P. 26(c). For example, a bankruptcy court might need to limit the normally broad inquiry under Rule 2004 to preserve properly-claimed privileges, or to prevent overly-broad, oppressive or unfair inquiries into topics that are irrelevant to a review of the conduct and assets of debtors. In *Jepson*, the Seventh Circuit held that even when parties agreed that a protective order should be entered, they must show "good cause" for the court to enter it. Judge Katz countered that because Rule 2004 does not require good cause to justify granting a bankruptcy examination, "case law requiring a showing of 'good cause' for the entry of a protective order under Fed.R.Civ.P. 26(c) is inapplicable to a Rule 2004 investigation. *Jepson v. Makita* does not control." 199 B.R. at 380.

However, while Federal Rule of Bankruptcy Procedure 2004 does not contain an explicit requirement of "good cause" for the granting of a motion to conduct an investigation, such a requirement is implicit and can be enforced by a protective order when

1992), *aff'd* 158 B.R. 655 (N.D.Ohio 1992) (privilege against self-incrimination); *In re ICS Cybernetics, Inc.*, 107 B.R. 821 (Bankr.N.D.N.Y.1989) (privilege against self-incrimination); *Matter of Sun Medical Management, Inc.*, 104 B.R. 522 (Bankr.M.D.Ga.1989) (attorney-client privilege); *In re Mudd*, 95 B.R. 426 (Bankr.N.D.Tex.1989)(privilege against self-incrimination); *In re GHR Companies, Inc.*, 41 B.R. 655, 661 (Bankr.D.Mass.1984) ("no accountant-client privilege exists under federal law"). *Contra In re Financial Corp. of America*, 119 B.R.

728 (Bankr.C.D.Cal.1990) (sustaining claims of attorney-client, attorney's work-product, common law official information privilege, but not privilege under Freedom of Information Act).

8. *Quaere* whether a determination by the bankruptcy court that documents constituted trade secrets or confidential commercial information worthy of protection under Bankruptcy Rule 9018 involves the exercise of the court's discretion in finding "good cause?"

the movant has been demonstrated to be acting in bad faith, such as for an improper purpose, including harassment, or where the information purportedly sought is either already well-known or within the would-be examiner's possession.

## THE FEDERAL RULES GOVERN THE GRANTING OF RULE 2004 PROTECTIVE ORDERS

 Examinations under Federal Rule of Bankruptcy Procedure 2004 may be subject to limitation by Federal Rules of Civil Procedure 26(c) and 45(c). Federal Rule 26(c)[9] provides limits upon discovery that have traditionally been applied in the issuance of protective orders limiting Rule 2004 examinations "for good cause shown." By reason of "the broad scope of Rule 9016, placed as it is in Part IX of the Rules," Federal Rule of Civil Procedure 45,[10] which governs the issuance of subpoenas to compel testimony and the production of documents, "applies in adversary proceedings, contested

---

9. With respect to protective orders, Federal Rule of Civil Procedure 26(c) provides in pertinent part:

> Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justices requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
>
> (5) that discovery be conducted with no one present except persons designated by the court;
>
> (6) that a deposition, after being sealed, be opened only by order of the court;
>
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and
>
> (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
>
> Fed.R.Civ.P. 26(c).

10. Federal Rule of Civil Procedure 45(c) provides as follows:

> (c) Protection of Persons Subject to Subpoenas.
>
> (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
>
> (2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
>
> (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.
>
> (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
>
> (i) fails to allow reasonable time for compliance;
>
> (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
>
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

matters, contested or involuntary petitions, *Rule 2004 examinations, and all other matters in a bankruptcy case in which testimony may be compelled.*" 10 *Collier on Bankruptcy* ¶ 9016.01 (15th ed. rev.1996) (citing *In re Mantolesky*, 14 B.R. 973, 979 (Bankr. D.Mass.1981) (emphasis added)).

Federal Rules of Civil Procedure 26 through 37, which govern pretrial discovery in the context of Federal civil cases, apply to adversary proceedings and contested matters filed in the bankruptcy court by reason of Federal Rules of Bankruptcy Procedure 7026 and 9014 respectively. The filing of a motion for Rule 2004 examination does not *per se* create a contested matter governed by the Federal Rules of Civil Procedure. *Cf. In re GHR Energy Corp.*, 33 B.R. 451, 453 n. 2 (Bankr.D.Mass.1983) (citing Fed. R. Bankr.P. 9014 Advisory Committee Note). Rule 2004 motions are generally granted *ex parte*, as was the case here, without the advance notice required to be given in a contested matter. *See* 9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. rev.1996). However, there is a subtle distinction between a *motion* for Rule 2004 examination and the *examination itself.* The conduct of a Rule 2004 examination is subject to the Federal discovery rules because bankruptcy examinations are in the nature of discovery proceedings and because, historically, the Federal Rules of Civil Procedure have been applied to bankruptcy examinations.

The granting of protective orders to limit Rule 2004 examinations "for good cause shown" as provided in Federal Rule of Civil Procedure 26(c) appears to be a matter of historical application. As Justice Holmes wrote, "The life of the law has not been logic; it has been experience."[11] Holmes, *The Common Law*, p. 1 (Boston 1881). The combination of history and logic justifies the exercise of discretion within the framework of Federal Rule 26(c) to limit Rule 2004 examinations whenever "good cause" is shown. The only other possible source for such authority, Federal Rule of Bankruptcy Procedure 9018, would not be applicable in most situations where protective orders are justified.[12]

---

(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.
F.R. Civ. P. 45(c).

**11.** The famous statement distilled from Holmes' Lecture No. 1 delivered at the Lowell Institute is quoted here in full:

The object of this book is to present a general view of the Common Law. To accomplish the task, other tools are needed besides logic. It is something to show that the consistency of a system requires a particular result, but it is not all. The life of the law has not been logic; it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed. The law embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics. In order to know what it is, we must know what it has been, and what it tends to become. We must alternately consult history and existing theories of legislation. But the most difficult labor will be to understand the combination of the two into new products at every stage. The substance of the law at any given time pretty nearly corresponds, so far as it goes, with what is then understood to be convenient; but its form and machinery, and the degree to which it is able to work out desired results, depend very much upon its past.
*Id.*, pp. 1–2. The interplay and application of the Bankruptcy Code and Federal Rules of Civil and Bankruptcy Procedure are developed by decisional, or judge-made law, in combination with enactments by the legislature, much as the common law itself developed.

**12.** Federal Rule of Bankruptcy Procedure 9018 authorizes the issuance of protective orders limiting access to public records in bankruptcy cases

Nevertheless, protective orders are rarely issued to limit Rule 2004 examinations, and it will be seen that this one should not have been issued.

### STANDING TO INTERVENE TO SEEK TO DISSOLVE THE PROTECTIVE ORDER

■■ "The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *United States v. Sierra (In re Petition of Tribune Co.)*, 784 F.2d 1518, 1521 (11th Cir.1986) (permitting newspaper publisher to intervene post-trial in criminal proceeding to obtain transcripts of bench conferences, which request was ultimately denied) (citing *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir.1983) (reversing an order of the U.S. district court that excluded the press from attending a court hearing and that denied access to court records)).[13] The news media has standing to intervene in bankruptcy proceedings for the purpose of moving to dissolve court-issued protective orders in the context of Rule 2004 examinations. *Air Line Pilots Association, International v. American National Bank and Trust Company of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 431 n. 6 (S.D.N.Y.1993), *aff'd* 17 F.3d 600 (2d Cir.

1994); *In re Apex Oil Co.*, 101 B.R. 92, 95–96 (Bankr.E.D.Mo.1989).

### MRS. SYMINGTON WAS THE PROPER SUBJECT OF A RULE 2004 EXAMINATION

■■ As the debtor's mother and his alleged partner in various financial transactions, Mrs. Symington was a proper subject of a Rule 2004 examination. "Third parties having knowledge of the debtor's affairs, as well as a debtor itself, are subject to examination." *In re Valley Forge Plaza Associates*, 109 B.R. 669, 674 (Bankr.E.D.Pa. 1990).[14] "Discovery under Rule 2004 extends beyond the debtor to persons associated with him as well as to those persons who may have had business dealings with the debtor." *Deloitte & Touche v. Hassett (In re CIS Corp.)*, 123 B.R. 488, 490 (S.D.N.Y.1991). *See In re Financial Corp. of America*, 119 B.R. 728 (Bankr.C.D.Cal.1990).

### MRS. SYMINGTON WAS PROPERLY SUBPOENAED

■■ Mrs. Symington was properly subpoenaed in this district to produce documents relevant to the bankruptcy case pending in the District of Arizona. A party wishing to conduct a Rule 2004 examination of a witness

---

in certain specified situations. However, by its terms, the rule is too narrow to supply a basis for the issuance of most of the protective orders that limit Rule 2004 examinations. Federal Rule of Bankruptcy Procedure 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Fed. R. Bankr.P. 9018. A Rule 2004 examination of a debtor was held to be improper where confidential commercial information was sought to be obtained. *In re Jewelers Shipping Ass'n*, 97 B.R. 149, 150 (Bankr.D.R.I.1989) (citing Federal Rule of Bankruptcy Procedure 2004, not Federal Rule of Bankruptcy Procedure 9018).

**13.** However, in the case of *In re Alexander Grant & Co. Litigation*, 820 F.2d 352 (11th Cir.1987), the Eleventh Circuit held that while the press had standing as a non-party in a bankruptcy-related proceeding to challenge a court-entered protective order restricting access to discovery, the news media "have no common-law right to examine the discovery materials at issue." 820 F.2d at 355. The court went on to state that private "documents collected during discovery are not judicial records.'" *Id.* (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir.1986)), and that "appellants possess no First Amendment rights to the protected information which override the provisions of Fed. R.Civ. P. 26(c)." *Alexander Grant*, 820 F.2d at 355.

**14.** "The persons to be examined and the parties in interest who may conduct the examination are not defined in the Rules nor the Code. However, by looking to the language of Rule 2004, it is evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr.D.Mass.1983).

residing outside of the district where a bankruptcy case is pending must obtain an order granting the Rule 2004 motion from the U.S. bankruptcy court where the bankruptcy case was filed. *See Hunter v. Hickman (In re Hickman )*, 151 B.R. 125, 128 (Bankr. N.D.Ohio 1993) ("Although a subpoena issued by the clerk under seal is sufficient to compel the attendance of witnesses under Rule 2004, it must be preceded by an order of court allowing the Rule 2004 Examination to commence."). The movant then files a certified copy of the order in the U.S. bankruptcy court in the district where the witness resides and obtains a subpoena from the court compelling her attendance at a deposition and/or her production of documents in the district of her residence.[15] *In re Texas International Co.*, 97 B.R. 582 (Bankr.C.D.Cal. 1989); *In re Mantolesky*, 14 B.R. 973 (Bankr. D.Mass.1981). *Cf. In re Sunridge Associates*, 202 B.R. 761 (Bankr.E.D.Cal.1996) (debtor's application seeking to have Texas bank produce documents in California proposed improper location for production as beyond reach of court's subpoena).

## MRS. SYMINGTON DID NOT ASSERT PROPER CLAIMS OF PRIVILEGE

 Mrs. Symington did not assert valid claims of privilege for confidentiality of the information requested. The premise that these documents "exist within her private mother-son relationship with J. Fife Symington" is of dubious merit. *Cf. United States v. Under Seal (In re Antitrust Grand Jury Investigation )*, 714 F.2d 347 (4th Cir.1983); *United States v. Jones*, 683 F.2d 817 (4th Cir.1982); *In re Grand Jury Proceedings (Appeal of Teresa Starr )*, 647 F.2d 511 (5th Cir.1981). The assertion that they "include numerous documents which are subject to the attorney-client privilege" was too vague to be meritorious. As the court stated in the case of *In re Mudd*, 95 B.R. 426, 431–432 (Bankr.N.D.Tex.1989):

> The requested documents are the type that would be maintained in the ordinary course of business; their preparation was not compelled, and their existence is a foregone conclusion.... Because it is not illegal to prepare or possess ordinary business records, there is no "realistic threat of incrimination" to the Debtor in compelling him to produce these documents.

*Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 412, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39, 57 (1976)).

The claim that her permanent and severe disability resulting from a stroke in 1993 rendered Mrs. Symington physically unable comply with a broad discovery request failed to provide any reason why her agents and attorneys could not act on her behalf providing access to the requested information.

## THE SUBSTITUTION OF MRS. SYMINGTON'S PERSONAL REPRESENTATIVE

 The motion to intervene to dissolve the protective order a contested matter to which the Federal Rules of Civil Procedure apply. Fed. R. Bankr.P. 9014. The motion to substitute Mrs. Symington's personal representative is likewise a contested matter governed by Federal Rule of Civil Procedure 25(a), which states:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Fed.R.Civ.P. 25(a).

 This Court unquestionably has subject matter jurisdiction over the present controversy. By its own terms, the protective

---

**15.** Federal Rule of Bankruptcy Procedure 9016 provides that "Rule 45 F.R. Civ. P. applies in cases under the Code." Federal Rule of Civil Procedure 45 governs the issuance of subpoenas in Federal cases.

order provided that it "shall not terminate at the conclusion of these actions," ¶ 10, and that the stipulation and order "shall be subject to further order of this Court." ¶ 15. Stipulation and Protective Order [P. 3]. "As long as a protective order remains in effect, the court that entered the order retains the power to modify it, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed." *United Nuclear Corp. v. Cranford Insurance Co.,* 905 F.2d 1424, 1427 (10th Cir.1990), *cert. denied,* 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). However, unless there are parties upon whom the Rule 2004 order could have been enforced, or parties in whose interest the consensual protective order could have been used to preserve the confidentiality of financial records, the power of this Court to decide the present controversy might have been limited to merely decide the present controversy might have been limited to merely striking that the protective order. By granting the substitution motion, this Court may compel the substituted party to produce the records in dispute. It is proper to grant the motion because Mrs. Symington's probate estate is eligible to be the subject of examination under Rule 2004 as an "entity." Mr. Washburne has been in possession of the documents since the beginning of this controversy, which has now been fully litigated. As custodian of her records, with full knowledge of the history of this litigation, Mr. Washburne's substitution as a respondent will not result in prejudice to him, but will further the interests of justice. Therefore, the motion to substitute Thomas D. Washburne, Mrs. Symington's personal representative, as a respondent in place of Martha F. Symington, deceased, will be granted.

## THE BURDEN OF MAINTAINING PROTECTIVE ORDERS AGAINST MODIFICATION

 One who obtains a protective order and seeks to have maintained "bears the burden of demonstrating the appropriateness of its enforcement and continuation." *In re Robert Landau Associates, Inc.,* 50 B.R. 670, 674 (Bankr.S.D.N.Y.1985) (citing *In re Silverman,* 36 B.R. 254, 258 (Bankr. S.D.N.Y.1984)). Protective orders are prior restraints upon free speech because they restrict the dissemination of information. However, the Supreme Court has upheld the constitutionality of a protective order issued pursuant to Federal Rule of Civil Procedure 26(c), holding that "judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17, 27 (1984). At issue there was the preservation of the confidentiality of the plaintiff's financial information from publication. However, several distinguishing elements were of considerable importance to the decision. First was the fact that in the absence of a protective order, unrestricted disclosure to the party defendant, a newspaper, would have resulted in the immediate publication of the information. Second was the fact that the financial information was irrelevant to the issues in the pending civil trial. Third, in granting the protective order, the trial court determined that it was necessary to prevent " 'the chilling effect' that dissemination would have on 'a party's willingness to bring his case to court.' " *Seattle Times,* 467 U.S. at 27, 104 S.Ct. at 2204, 81 L.Ed.2d at 23 (quoting the Record at 63). Fourth, in affirming the order, the Supreme Court of Washington found that publication of the information would " 'result in annoyance, embarrassment, and even oppression.' " 467 U.S. at 37, 104 S.Ct. at 2209, 81 L.Ed.2d at 23 (quoting the Supreme Court of Washington in *Rhinehart v. The Seattle Times Co.,* 98 Wash.2d 226, 257, 654 P.2d 673, 690 (1982)). Fifth, the Supreme Court noted that the protective order was premised upon a showing of good cause. Sixth, it held that limitations upon pretrial discovery fulfilled a valid government interest unrelated to the suppression of expression, namely protecting litigants from discovery abuses that damage reputations and impede access to justice. Seventh, the protective order did not contain an impermissible restriction upon the publi-

cation of the information if gained from other sources.

However, in the case of *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), where a plurality of the Supreme Court held that the press has a First Amendment right of access to criminal trials, it was noted "that historically both civil and criminal trials have been presumptively open." 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17, 65 L.Ed.2d at 992 n. 17. In a concurring opinion, Justice Brennan wrote: "[R]esolution of First Amendment public access claims in individual cases must be strongly influenced by the weight of historical practice and by an assessment of the specific structural value of public access in the circumstances." 448 U.S. at 597–598, 100 S.Ct. at 2839, 65 L.Ed.2d at 1003. This became the majority view of the Court expressed in *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (invalidating a Massachusetts statute that permitted the closure of criminal trials during the testimony of minors who were victims of sexual crimes) In *Press–Enterprise Co. v. Superior Court of California for the County of Riverside,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), the Court extended the right of public access to a preliminary hearing in a California state criminal prosecution.

Applying the rationale of *Richmond Newspapers* and *Seattle Times* to determine whether the media is entitled to obtain the information in this case requires an analysis of the following questions: (1) whether the proceeding in question was traditionally public or private; (2) whether public access is important to the functioning of the judicial process; (3) the sensitive nature of the documents; (4) potential harm resulting from the dissemination of the material to the public; and (5) the nature and magnitude of the harm.

## RULE 2004 EXAMINATIONS ARE PUBLIC PROCEEDINGS

The direct antecedents of Rule 2004 were Section 21(a) of the Bankruptcy Act of 1898 and Federal Rule of Bankruptcy Procedure 205. Section 21 provided that such examinations should be held "before the court or before the judge of any State court." 11 U.S.C. § (1976). In the case of *Stein v. Elizabeth Trust Corp. (In re Winton Shirt Corp.),* 104 F.2d 777 (3d Cir.1939), the Court of Appeals for the Third Circuit stated:

> Moreover, we entertain no doubt that the examination of witnesses pursuant to the provisions of section 21(a) of the Bankruptcy Act must take place at a public hearing. Such is the case because the referee in conducting the hearings serves as the court and the processes of the court are available to compel the attendance and testimony of witnesses. Such hearings cannot be conducted in camera. Counsel for interested persons are entitled to examine the proceedings. Under circumstances substantially similar to those of the case at bar, it has been held that a creditor or even the bankrupt himself is entitled to examine the testimony given at hearings as well as books and records in the possession of the trustee. *In re Saur,* D.C. [S.D.N.Y (1903)], 122 F. 101; *In re Samuelsohn,* D.C. [W.D.N.Y.(1909)], 174 F. 911; *Petition of Moulthrop,* 6 Cir. [ (1918)], 249 F. 468.

104 F.2d at 780.

On October 1, 1973, when the Federal Rules of Bankruptcy Procedure went into effect, Bankruptcy Rule 205 did not specifically require that bankruptcy examinations be conducted in open court. *See* 12 *Collier on Bankruptcy* ¶ 205.11 (14th ed.1978). The practice since 1973 has been to hold bankruptcy examinations outside of the presence of the court, in the same manner as pretrial discovery is conducted under the Federal Rules of Civil Procedure. Since the Bankruptcy Code went into effect on October 1, 1979, meetings of creditors are no longer presided over in court by bankruptcy judges. First conducted by court deputies in a specially-designated room in the courthouse, meetings of creditors in this district are now conducted out of the precincts of the bankruptcy court by the United States Trustee.

In the case of *The Baltimore Sun Co. v. Astri Investment Management & Securities Corp. (In re Astri Investment, Management & Securities Corp.),* 88 B.R. 730 (D.Md. 1988), U.S. District Judge Frank Kaufman

employed the same historical antecedents of bankruptcy examinations to conclude that meetings of creditors conducted under Section 341 of the Bankruptcy Code are open to the press and public. Because Rule 2004 examinations have the same *raison d'etre* as meetings of creditors under Section 341 of the Bankruptcy Code, the same rationale exists for the two proceedings to be open to the public. Both proceedings seek information relevant to the conduct of debtors, identify assets of the estate, and investigate matters concerning the administration of the bankruptcy case and the right of the debtor to receive a discharge. There is a compelling nee for the discovery of such information to be readily available to other creditors, interested parties, and the public at large.

Holding Rule 2004 examinations to be open proceedings will not dramatically alter the manner in which prelitigation bankruptcy examinations are now conducted. The issue of public examinations generally arises only in high profile cases having a compelling public interest.

## STRUCTURAL SIGNIFICANCE OF PUBLIC ACCESS TO RULE 2004 EXAMINATIONS

It is critical to the functioning of the bankruptcy process that Rule 2004 examinations of debtors and third parties authorized by the bankruptcy court be open to the public. Much of Justice Brennan's concurring opinion in *Richmond Newspapers* regarding the benefits of open criminal trials is equally applicable to bankruptcy proceedings convened for the interrogation of witnesses regarding debtors' actions and assets. "Publicizing trial proceedings aids accurate factfinding." 448 U.S. at 596, 100 S.Ct. at 2838, 65 L.Ed.2d at 1003. "[O]pen examination of witnesses viva voce, in the presence of all mankind, is much more conducive to the clearing up of truth, than the private and secret examination ... where a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal." 448 U.S. at 597, 100 S.Ct. at 2838, 65 L.Ed.2d at 1003 (quoting 3 W. Blackstone, *Commentaries* 373). In other words, witnesses are more likely to be forthcoming at a public hearing as opposed to a private one.

A public proceeding will also help assure that witnesses are treated fairly and equitably. As Justice Brennan wrote in the context of criminal trials:

For a civilization founded upon principles of ordered liberty to survive and flourish, its members must share the conviction that they are governed equitably. That necessarily underlies constitutional provisions as diverse as the rule against takings without just compensation and the Equal Protection Clause. It also mandates a system of justice that demonstrates the fairness of the law to our citizens. One major function of the trial, hedged with procedural protections and conducted with conspicuous respect for the rule of law, is to make that demonstration.

Secrecy is profoundly inimical to this demonstrative purpose of the trial process. Open trials assure the public that procedural rights are respected, and that justice is afforded equally. Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law. Public access is essential, therefore, if trial adjudication is to achieve the objective of maintaining public confidence in the administration of justice.

448 U.S. at 594–595, 100 S.Ct. at 2837, 65 L.Ed.2d at 1001 (citations omitted).

## THE HARM OF RELEASING MRS. SYMINGTON'S PRIVATE FINANCIAL INFORMATION IN THE INSTANT CASE IS OUTWEIGHED BY THE RIGHT OF PUBLIC ACCESS

■ Information relating to Mr. Symington's financial dealings with his mother which may touch upon matters highly relevant to the bankruptcy case should not be protected from discovery under Rule 2004. The scope of the request for production of documents was narrow because it related only to financial dealings between Mrs. Symington and her son. Regardless of the relevance of financial information reasonably demanded from Mrs. Symington in the present case (unlike the irrelevance of the financial data demanded in *Seattle Times*), good cause

might have existed for the issuance of the blanket protective order to prevent embarrassment, emotional distress or other non-monetary injury to Mrs. Symington caused by the dissemination of her personal financial information to the public. However, the risk of such harm to an individual must be weighed against the compelling need of the community to have access to the information. In this case, "extraordinary circumstances" [16] exist, namely the overriding public interest in maintaining confidence in the bankruptcy system and the right to know the truth about allegations of corruption against Arizona's highest elected State official, that outweigh whatever privacy interests Mrs. Symington might have had in her personal financial information.[17] Mrs. Symington's affinity to the debtor, a public official with whom she allegedly engaged in financial dealings, effectively eliminated whatever expectations of privacy she might have had in the records of those transactions. It is beyond dispute that her personal representative does not have an interest to protect in the decedent's private financial information, much if not all of which are matters of public probate.

### THE PENDENCY OF ADVERSARY PROCEEDINGS

The filing of a complaint to determine dischargeability of debt against J. Fife Symington, III, by a successor to the Bank of Arizona may deprive the Bank of the right to proceed with discovery under Rule 2004. However, that issue has not been raised and if raised, would more properly be addressed to the U.S. Bankruptcy Court for the District of Arizona, which entered the order granting the Rule 2004 examination.

WHEREFORE, the motion to intervene will be GRANTED, the motion to substitute Mrs. Symington's personal representative will GRANTED, and the protective order will be STRICKEN.

ORDER ACCORDINGLY.

---

16. *See United States v. Doe (In re Grand Jury Subpoena Duces Tecum Dated April 19, 1991)*, 945 F.2d 1221, 1226 (2d Cir.1991) (modification of protective order based upon "compelling need or extraordinary circumstances").

*APPENDIX I*

The subpoena demanded the production of the following documents:

1. All documents which refer or relate to payments made by Ann Symington [debtor's spouse] to you to satisfy obligations owed to you by the Debtor, or by his political campaigns.

2. All documents which refer or relate to money, personal property, or assets of any other nature or type, with a value of more than $1,000, which has been loaned, given, or transferred by the Debtor (or anyone acting on his behalf), or his marital community, to you from 1987 to the present.

3. All documents which refer or relate to any gifts or transfers of money or property of any type with a value in excess of $1,000, which have been made by you or on your behalf to the Debtor from 1987 to the present.

4. All documents which refer or relate to any gifts or transfers or money or property of any type with a value of more than $1,000 made by you or on your behalf to any person or entity to hold for the eventual benefit of the Debtor.

5. All documents which refer or relate to the distribution of funds to you which resulted directly or indirectly from the Shimizu Corporation's or Shimizu Development's acquisition of the Debtor's interest and/or your interest in the Esplanade and/or Scottsdale Seville projects. This request includes, but is not limited to, the $500,000 payment from Seville Subtier Limited Partnership, or Shimizu Land Corporation, Shimizu Development, or any related entities.

6. All documents which refer or relate to the obligation or indebtedness which

---

17. "When litigation involves public agencies or officials, the need for public scrutiny weighs heavily in favor of open proceedings." Katherine Wiesepape Pownell, *The First Amendment and Pretrial Discovery Hearings: When Should the Public and Press Have Access?* 36 UCLA L.Rev. 609, 632 (Feb.1989).

was satisfied by, or gave rise to, the payment(s) referred to in the preceding request.

7. All partnership agreements for all partnerships in which you are or have been a partner, since 1987 and in which the Debtor has or had a direct or indirect ownership or management interest.

8. All documents which refer or relate to any consideration paid or contributed by you in exchange for your interest in each of the partnerships referred to in the preceding request.

Subpoena duces tecum issued by the U.S. Bankruptcy Court for the District of Maryland.

## *APPENDIX II*
## TEXT OF THE STIPULATION AND PROTECTIVE ORDER

WHEREAS, on or about February 8, 1996, Jeffrey J. Goulder Esq., counsel for Bank of America Arizona, as custodian of various pension funds (this Creditor) in *In re J. Fife Symington, III,* Case No. B–95–08397–PHX–GBN, presently pending in the United States Bankruptcy Court in the District of Arizona, caused this Court to issue a Subpoena in a Case under the Bankruptcy Code (the subpoena to Martha F. Symington ("MFS")); and

WHEREAS, the subpoena was served by overnight courier upon Thomas D. Washburne, Esq. ("TDW"), counsel for MFS, duly authorized by MFS to accept service; and

WHEREAS, MFS asserts that all her existing documents responsive to the subpoena ("responsive documents") (a) are in the possession of TDW, (b) constitute private financial records of MFS, over which she seeks to maintain confidentiality, (c) exist within her private mother-son relationship with J. Fife Symington, Debtor herein, and (d) include numerous documents which are subject to the attorney-client privilege; and

WHEREAS, MFS, through counsel, has advised this Creditor that MFS was severely and permanently disabled by a stroke in 1993; and

WHEREAS, MFS has instructed counsel to exercise and to preserve her attorney-client privilege to the full extent of the law; and

WHEREAS, MFS, through counsel, has contended that a large portion of the responsive documents are outside the scope of this Creditor's legitimate inquiry, which contention is denied by this Creditor; and

WHEREAS, MFS has declined to respond and to produce the non-privileged responsive documents absent assurances that those non-privileged responsive documents will be held in confidence subject to their appropriate use in the pending bankruptcy proceeding (In the United States Bankruptcy Court, District of Arizona, Case No. B–95–08397–PHX–GBN) ("the pending Bankruptcy proceeding"); and

WHEREAS, MFS and this Creditor wish to resolve their differences through the production of the non-privileged responsive documents to this Creditor subject to the terms and conditions of this Stipulation and Order.

NOW THEREFORE, it is this 23rd day of May, 1996, hereby stipulated and ordered, as follows:

1. MFS, through her attorney, shall cause the non-privileged responsive documents to be reproduced on sheets of paper imprinted with the word "confidential" thereon, and further stamped "subject to protective order and/or confidentiality stipulation" stamped at the top thereof or in another location to preserve the information on the document.

2. MFS, through counsel, shall identify all responsive documents withheld from production on the basis of the attorney-client privilege in a standard-form privilege log, as requested by the subpoena, and include the privilege log with the non-privileged responsive documents to be produced.

3. MFS, through counsel, shall have the non-privileged responsive documents copied as described above and ready and available for inspection by Jeffrey J. Goulder, Esq. ("counsel for this Creditor") [and] shall be readied for shipment and shipped to counsel for this Creditor at this Creditor's expense within five business days of date of this Stipulation and Order.

4. All of the non-privileged documents thus produced and the privilege log given over to counsel for this Creditor, are hereby designated, and will be received by counsel for this Creditor, as "Confidential Material." Documents which constitute Confidential Material herein, but which this Creditor has received from another source as non-confidential, shall no longer constitute Confidential Material upon notification by counsel for this Creditor to counsel for MFS of the identify and source of such documents.

5. Confidential Material may be disclosed and used by counsel for this creditor only for the purpose of preparing and presenting this creditor's case, including an adversary proceeding or contested matter, in the pending Bankruptcy proceeding in Case No. B–95–08397–PHX–GBN and only to designated persons, only as specifically permitted by this Stipulation and Order.

6. Confidential Material may be disclosed in confidence to:

A. Counsel for this Creditor, other attorneys, paralegals and staff of the office of counsel for this Creditor.

B. The client-representative and in-house attorney of this Creditor (Investment Manager, McMorgan & Co.), experts and consultants specially retained or employed by counsel for this Creditor in connection with the preparation of this case.

C. The Debtor, counsel of record, and other attorneys, paralegals and staff of counsel of record for the Debtor.

D. Experts and consultants specifically retained or employed by counsel for the Debtor in connection with the preparation of this case.

E. The Chapter 7 Trustee and his counsel of record in this action.

F. Counsel of record of other creditor parties in attendance at a duly convened deposition or proceeding in court in the pending bankruptcy proceeding, only in such instances and to the extent that counsel for this Creditor or counsel for the Debtor in their professional judgment introduce or otherwise use Confidential Material in such proceedings.

7. In all instances of disclosure of Confidential Material, the disclosing party shall (1) present a copy of this Stipulation and Order to the individual to whom disclosure is to be made, (2) receive assurances from the individual that he or she has read and understands this Stipulation and Order, (3) obtain on the copy this Stipulation and Order the signature of the individual, signifying that the individual agrees to be bound by the confidentiality imposed by this Stipulation and Order, and (4) retain the signed copy of this Stipulation and Order in the possession of the party disclosing the Confidential Material.

8. Upon the submission of any Confidential Material to the Court in the pending bankruptcy proceeding, or to a witness therein, that Court shall have full jurisdiction over the document so offered. The party submitting the document, whether attached to a pleading, for admission into evidence, or for identification, shall provide that Court with a copy of this Stipulation and Order and shall apprise the Court of its provisions, and shall seek to uphold and preserve the provisions of this Stipulation and Order by submitting the Confidential Material under seal or with other appropriate protection. Further, the party offering this document (or in receipt thereof) in Court shall give the parties to this agreement and their representatives reasonable notice in advance of offering Confidential Material to a Court, so that the other parties to this agreement may be heard by the Court.

9. Nothing in this Stipulation and Order shall prevent or otherwise restrict counsel from rendering advice to their clients and, in the course thereof, relying generally on examination of Confidential Material; provided, however, that in rendering such advice and otherwise communicating with such clients, counsel shall not make specific disclosure of any item so designated except pursuant to the procedures of this Stipulation and Order.

10. The provisions of this Stipulation and Order shall not terminate at the conclusion of these actions. Within fifteen days after request upon final conclusion of all aspects of this litigation, Confidential Material and all copies of same (other than exhibits of record)

shall be returned to the party or person that produced such documents or, at the option of the producer (if it retains at least one copy of the same), destroyed. All counsel of record shall make certification of compliance herewith and shall deliver the same to counsel for the party who produced the documents, not more than thirty days after receipt of a request pursuant to this paragraph.

11. Nothing in this Stipulation and Order shall prevent any party or other person from seeking enforcement or modification of this Stipulation and Order, from objecting to discovery that it believes to be otherwise improper, from asserting rights to discovery in any other proceeding, or from contesting the propriety of confidentiality with respect to some or all of the documents produced, and the U.S. Bankruptcy Court, District of Maryland, retains jurisdiction with respect to all such issues. Further, the approval of this Stipulation and Order by this Court does not constitute a determination by this Court that any responsive document is adjudged to be confidential.

12. The attorneys are responsible for employing reasonable measures, consistent with this Stipulation and Order, to control and to restrict duplication of, access to, and distribution of copies of Confidential Material, to appropriate purposes within the pending Bankruptcy Proceeding. Parties shall not duplicate any Confidential Material except for filing in Court under seal and for purposes permitted by this agreement.

13. Review of the Confidential Material by counsel, experts, or consultants for the litigants in the litigation shall not waive the confidentiality of the documents or objections to production. The inadvertent, unintentional, or *in camera* disclosure of Confidential Material and information shall not be deemed a waiver, in whole or in part, of any party's claims of confidentiality.

14. Nothing contained in this Stipulation and Order and no action taken pursuant to it shall prejudice the right of any party to contest the alleged relevancy, admissibility, or discoverability of the Confidential Material and information sought.

15. This Stipulation and Order shall be subject to the further order of this Court. Stipulation and Protective Order [P. 3].