*In re* MARRIAGE OF JOAN M. BUCHMILLER, Petitioner-Appellee, and JAMES E. BUCHMILLER, Respondent-Appellant.

Fifth District   No. 5—84—0723

Opinion filed July 30, 1985.

W. A. Dillow III, P.C., of Greenville, for appellant.

Dunham, Boman & Leskera, of Belleville (John W. Leskera and Russell K. Scott, of counsel), for appellee.

PRESIDING JUSTICE JONES delivered the opinion of the court:

This is the fifth appeal brought by the respondent, James Buchmiller, during the course of this litigation, which relates to the dissolution of the marriage of the petitioner, Joan Buchmiller, and the respondent, a practicing attorney. The first four appeals were consolidated (No. 5—83—0299) on motion of the respondent and decided in an order of this court filed April 18, 1985, pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23). We denied the respondent's motion to consolidate this appeal with the four prior ones. In the fourth appeal the respondent sought review of an order of the trial court entered on June 1, 1984, in which the trial court found him in wilful contempt of court for failure to comply with previous court orders but deferred sentencing pending compliance. The court found further in the order of June 1, 1984, that the parties were in agreement that the amount of arrearage for maintenance was $13,300 through April 30, 1984. In reliance upon *Bone v. Bone* (1976), 43 Ill. App. 3d 363, 356 N.E.2d 1348, and *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 445 N.E.2d 811, we determined that the order finding respondent in contempt without imposing punishment was not

a final and appealable one and dismissed the appeal for lack of jurisdiction to consider it. The present appeal is from an order entered October 2, 1984, which is related to the order of June 1, 1984. The petitioner maintains that the order of October 2, 1984, is, likewise, not a final and appealable one. We agree and, accordingly, dismiss the appeal for lack of jurisdiction.

The record contains an order dated August 28, 1984, setting sentencing for contempt on September 21, 1984. However, no hearing appears to have been conducted on September 21, 1984. The record contains a report of proceedings held and an order entered on October 2, 1984. The report of proceedings and the order both recite that "[f]or the record, this case has been called for purposes of dictating into the record a conclusion to the day's activities which started quite early and have lasted five or six or more hours." The report and order recite further that

> "[t]he Court having gone through an extensive conference with the attorneys in considering the various aspects of the case during this day in the process of the sentencing situation orders that Mr. Buchmiller assign various properties into a trust which Mr. Dillow [counsel for respondent] is to prepare for the purpose of protecting these properties from creditors and insuring Ms. Buchmiller of protecting herself down the line in the event of an adverse decision to Mr. Buchmiller in his sought after appeals in the Fifth District Court, of rulings of this Court. The properties involved are an office building, including a title company office, a farm property described as the Whitlock Property, and a lake lot. The assignments will be of his interest whatever it may be in these properties. The Court understanding that these are half interests in some if not all of these properties owned by Ms. Buchmiller."

In its order the court sought to have title reports furnished on the properties, ordered further payment for child support, and refused to stay the amounts due by Mr. Buchmiller under prior order of the court, "[i]t being understood that there is a previous order existing Mr. Buchmiller is honoring and paying interest payments as he receives them on a balloon note that becomes due, I believe, in 1985." The order stated further:

> "The Court has expressed some concern it has—Mr. Leskera [counsel for petitioner], about the remaining balance due on the note of the bubble note or whatever the accelerated note in 1985 whenever it comes due at that time, the balloon note, as to the possibility that the proceeds of that note had been as-

signed to the bank to cover possibly outstanding indebtedness due the bank or possibly only to be used as security in the event that Mr. Buchmiller fails to comply with his obligations through that bank. I'm not sure which, but I would like to be clarified on that point by some documents. In the event that that hasn't been done to this date, the Court will impose an injunction against the bank or Mr. Buchmiller as the case may be from having it done at this late date if it hasn't already been accomplished. By the same token, Mr. Buchmiller is enjoined from doing anything with the offices, farm, Whitlock Property, lake lot, or deed other than what I have just ordered and that injunction is instanter as it is of this moment. A trustee for the property can be chosen by mutual agreement between the attorneys."

The record of proceedings shows that the trial court addressed the respondent as follows concerning its failure to incarcerate him:

"Mr. Buchmiller, it's rare that I am doing what I'm doing in this case. I believe that if I were to incarcerate you, your professional reputation would be destroyed, and I don't think you would function as an attorney any further if I were to do something else. And based upon that—knowing that you have the obligations that you have, and there's always a possibility that you can pull this thing out of the fire by possibly increased attorney's business or maybe the title company [owned by the respondent] increased business or some basis for your conducting business as an attorney could help satisfy the obligations that you have undertaken. I think I'm going out of my way to do it, but I do feel that the basis of assignments is to protect Ms. Buchmiller as for it is to protect you or creditors or anybody else. I don't—I don't care about them. I care about the fact that nothing has been paid to Ms. Buchmiller barring the 72 or 317.50 way back or $1,500.00 payment, whichever, and then the 350 payments lately and also a considerable amount of alimony and child support and attorney's fees. Again, taking into consideration even today's attorney's fees by Mr. Leskera will be assessed but deferred until later date. And in keeping your practice intact it will give you a chance to survive and hopefully help direct payments to Ms. Buchmiller somewhere along the line. I can't express my opinion of the nature of your appeals because that's something for another Court to do. But in the event that there is an adverse ruling to you, Mr. Buchmiller, the security that Ms. Buchmiller has on these pieces of prop-

erty certainly will be to her benefit and will be there. They'll be transferred to her whether—unless she makes some—unless you make some other arrangements at that time to pay her in full which I don't expect you to do unless you get lucky somewhere along the line. On the other hand, if you're successful in your appeal, then we'll have to start from scratch again."

Contempt, whether civil or criminal, is punishable, and, in general, where no punishment has been imposed an order adjudicating one to be in contempt is not final and not reviewable (*Valencia v. Valencia* (1978), 71 Ill. 2d 220, 375 N.E.2d 98; *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203; *Bone v. Bone* (1976), 43 Ill. App. 3d 363, 356 N.E.2d 1348). However, sanctions rendering contempt judgments appealable are not limited to fines and imprisonment. (*Siegel v. Siegel* (1981), 84 Ill. 2d 212, 417 N.E.2d 1312.) In *Siegel* a father petitioned the forum court in Illinois for a rule to show cause why the mother should not be held in contempt for applying to a California court for modification of the child-visitation provisions of the forum court's decree dissolving the parents' marriage. The forum court found the mother in contempt and provided that all child-support payments by the father were to cease retroactively to the date of the father's filing of the petition for rule to show cause. In an appeal of the forum court's order the supreme court held the judgment appealable as a final order, having concluded that "[i]t is apparent here that the action of the circuit judge was intended, at least in part, as punishment for what he viewed as the mother's contemptuous conduct in violating that court's prior orders." (84 Ill. 2d 212, 217, 417 N.E.2d 1312, 1314.) In the instant case the respondent was ordered to assign certain assets to a trust—and enjoined from otherwise disposing of those assets—for the benefit of the petitioner for the express purpose of preserving and protecting them against possible dissipation pending decision by the appellate court. Unlike the court in *Siegel*, we perceive no intention on the part of the trial court here to punish the respondent. The order calls for no liability to the respondent beyond that already occasioned by earlier orders of the court entered prior to the finding of contempt, and the order does no more than attempt to implement those orders should they be affirmed on appeal. The effect of the order is not to prejudice, disable, or penalize the respondent; in short, the order does not punish him. The trial court deliberately chose not to incarcerate the respondent because of the damage incarceration might wreak upon his professional reputation. This is not to say that the trial court might not yet incarcerate, fine, or otherwise punish the respondent for contempt. Since punishment may yet be im-

posed, something more than enforcement of the judgment remains to be done (see *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483), and the order is, thus, not a final and appealable one.

Appeal dismissed.

KARNS and WELCH, JJ., concur.