2025 IL App (1st) 230803

No. 1-23-0803

Opinion filed September 12, 2025

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* CONSERVATION OF NEXTLEVEL HEALTH PARTNERS | ) ) ) ) ) | |
| (The People of the State of Illinois *ex rel.* Dana Popish Severinghaus, in Her Official Capacity as Director of Insurance and Conservator of NextLevel Health Partners, Inc., | ) ) ) ) ) | Appeal from the Circuit Court of Cook County, Chancery Division. |
| Plaintiffs-Appellees, | ) ) | |
| and | ) ) | No. 2020 CH 4431 |
| NextLevel Health Partners, | ) ) ) | Honorable Pamela McLean Meyerson, Judge, presiding. |
| Defendant-Appellee | ) ) | |
| (Dr. Jacqueline Stevens, | ) ) | |
| Intervenor-Appellant)). | ) ) ) ) ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Mikva and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1     Intervenor, Dr. Jacqueline Stevens, appeals the denial of her motion to vacate orders sealing certain insurance conservation records under the Illinois Insurance Code. 215 ILCS 5/187 *et seq.* (West 2020). The primary issue on appeal is whether the circuit court erred in deciding that the Code does not violate the first amendment right of public access to court records by requiring confidentiality in insurance conservations. For the following reasons, we affirm.

¶ 2                               I. BACKGROUND

¶ 3     In June 2020, the Director of the Department of Insurance filed a verified complaint for conservation of assets and injunctive relief against NextLevel Health Partners, Inc., a health maintenance organization, pursuant to article XIII of the Code. 215 ILCS 5/art. XIII (West 2020). The circuit court entered an order of sequestration, pursuant to the Code's section governing conservations. 215 ILCS 5/188.1 (West 2020). The order sealed the court file and enjoined all persons with knowledge of the proceedings from disclosing any records or information pertaining to NextLevel. The circuit court subsequently entered an order of conservation as to NextLevel.

¶ 4     The Conservator and NextLevel jointly sought circuit court approval of a member transfer agreement to convey NextLevel's members to Meridian Health Plan of Illinois, Inc., another Illinois health maintenance organization. NextLevel filed several documents in support of the agreement, including a declaration from an actuary and two corresponding exhibits that analyzed NextLevel's financial condition. The circuit court approved the membership transfer agreement.

¶ 5     On the Director's motion, the circuit court unsealed the court file and the proceedings going forward. However, four records remained sealed in full or partially redacted: the two exhibits to the actuary's declaration, two paragraphs of the Director's verified complaint, and one paragraph

of the circuit court's conservation order. The circuit court then permitted Dr. Jacqueline Stevens to intervene. Stevens moved to vacate all orders restricting access to documents filed in the proceedings and to declare the Code's confidentiality provisions unconstitutional. The circuit court denied Stevens's motion and her motion to reconsider. Ultimately, the circuit court entered an agreed, final order discharging NextLevel from conservation. This timely appeal followed. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 6                                    II. ANALYSIS

¶ 7                                    A. Mootness

¶ 8      NextLevel argues that the release of the sealed records during the conservation proceedings mooted intervenor's claims. Stevens argues that despite their release, the records remain subject to the circuit court's seal and redaction order. "A case is moot when plaintiffs have secured what they basically sought and a resolution of the issues could not have any practical effect on the existing controversy." *Baker v. Forest Preserve District*, 2015 IL App (1st) 141157, ¶ 35. We review mootness *de novo. Gassman v. Clerk of the Circuit Court*, 2019 IL App (1st) 171543, ¶ 18.

¶ 9      At various points below during the conservation, the sealed records appeared unredacted on the public docket and were accessible to the public, seemingly due to a clerical error. However, the seal and redaction order still exists and binds the parties, among them NextLevel and Stevens, who agree that Stevens could be held in contempt if she publishes the sealed records. Thus, resolution of this appeal could resolve the existing controversy by vacating the circuit court's order, unsealing the records in full and empowering intervenor to publish without fear of contempt. See *In re A Minor*, 127 Ill. 2d 247, 255-57 (1989) (determining that a live dispute existed as to order entered in closed juvenile proceeding that had since concluded where "[a]ll the subject

matters of the litigation—the appellant, the minor's identity, and the circuit court's orders" were "still in existence").

¶ 10 NextLevel also argues that because the circuit court has since terminated the conservation, no case exists to which this court could remand. NextLevel relies on the procedure in the Code for terminating receivership proceedings, stating that the Code only allows for reopening proceedings if new assets are found. 215 ILCS 5/211.1(a), (c) (West 2020). Stevens contends that the Code actually allows the Director to petition to reopen the proceedings "for good cause shown," not just in the event of newly-discovered assets. 215 ILCS 5/211.1(c) ("The Director may petition the court to reopen the proceedings for good cause shown, including the marshaling of additional assets, and the court may enter such other orders as may be deemed appropriate.") Most civil appeals begin once a case has concluded under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). The plain language of the Code speaks to the Director's power to reopen proceedings, not this court's power to remand a case, and it does not limit reopening to situations involving additional assets. Stevens's claims are therefore not moot.

¶ 11 B. First Amendment Challenges to the Insurance Code

¶ 12 Stevens raises both facial and as-applied first amendment challenges to two subsections of the Code pertaining to conservation, a form of insurance receivership. 215 ILCS 5/188.1(4), (5) (West 2020). NextLevel argues that Stevens may not attack both subsection 4 and 5 on appeal because the circuit court applied and Stevens challenged only subsection 5 below. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("[I]ssues not raised in the trial court *** may not be raised for the first time on appeal."). Stevens argued against both provisions throughout, and the circuit court rendered a decision as to both. At least one order of the circuit court refers to

holding a hearing in chambers under subsection 4. 215 ILCS 5/188.1(4) (West 2020). Both confidentiality provisions are therefore properly before this court.

¶ 13    We begin with Stevens's facial constitutional challenges under the first amendment. A court presumes that the statute at issue is valid (*Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 33); a challenger bears the burden of establishing a constitutional violation—namely, that the statute is unconstitutional under any set of facts. *Id.* If so, the statute is "void[ ] *** for all parties in all contexts." *Walker v. Chasteen*, 2021 IL 126086, ¶ 31. We review a statute's constitutionality *de novo*. *Id.* ¶ 30.

¶ 14    Subsection 4 requires that all hearings in the conservation take place in chambers upon the insurer's request or otherwise at the circuit court's discretion. 215 ILCS 5/188.1(4) (West 2020). Subsection 5 keeps all conservation court records confidential until the circuit court orders or an insurer requests otherwise:

> "In conservation proceedings and judicial reviews thereof, all records of the company, other documents, and all insurance department files and court records and papers, so far as they pertain to and are a part of the record of the conservation proceedings, shall be and remain confidential except as is necessary to obtain compliance therewith, unless and until the court, after hearing arguments in chambers from the Director and the company, shall decide otherwise, or unless the company requests that the matter be made public." *Id.* § 188.1(5).

¶ 15                          1. First Amendment Right of Access

¶ 16    Stevens first argues that the confidentiality provisions violate the right of public access to court proceedings implicit in the first amendment. See *Richmond Newspapers, Inc. v. Virginia*,

448 U.S. 555, 580 (1980) (opinion of Burger, CJ., joined by White and Stevens, JJ.) . Whether the first amendment guarantees access to these proceedings "is a legal question we review *de novo*." *In re Gee*, 2010 IL App (4th) 100275, ¶ 19. The United States Supreme Court recognized the right of access to criminal trials in *Richmond Newspapers* "to ensure that [the] constitutionally protected discussion of governmental affairs is an informed one." (Internal quotation marks omitted.) *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604-05 (1982). In light of the "theoretically endless" breadth of such protection, however (*Richmond Newspapers*, 448 U.S. at 586-88 (Brennan, J., concurring)), the Supreme Court framed the right of access as a rebuttable presumption that must first be established as to the document or proceeding at issue:

> "The determination of whether a first amendment right of access attaches to a particular record requires a two-step process under what is typically known as the 'experience and logic test.' *Press-Enterprise II*, 478 U.S. at 9-10, 106 S.Ct. 2735 (1986); see also *Skolnick*, 191 Ill.2d at 232, 246 Ill.Dec. 324, 730 N.E.2d 4. First, a court must consider whether the document is one that has historically been open to the press and general public (the 'experience' prong). *Press-Enterprise II*, 478 U.S. at 8, 106 S.Ct. 2735. Second, a court must consider whether public access to the document plays a significant positive role in the functioning of the particular judicial process in question (the 'logic' prong). *Id.* *** If the test of experience and logic is met, a qualified first amendment right of public access attaches to the material." *People v. Zimmerman*, 2018 IL 122261, ¶ 28.

Though Supreme Court precedent only addresses access to criminal proceedings, the federal circuits have extended the right to civil proceedings as well. *Courthouse News Service v. Brown*, 908 F.3d 1063, 1069 (7th Cir. 2018).

¶ 17    Stevens argues that the right of access attaches to insurance conservation proceedings because they take place in civil courts and the associated records are filed in civil courts. See, *e.g.*, *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 232 (2000) (holding that the right of access attached to a counterclaim in a tort case when it was filed). NextLevel and the State contend that whether any first amendment right exists depends on the tradition of access to and purpose of insurance conservation specifically.

¶ 18    The nature of the specific proceeding or record at issue is an intrinsic part of right of access analysis. The Supreme Court explained at the test's inception that only "[i]f *the particular proceeding in question* passes [the] tests of experience and logic" does "a qualified First Amendment right of public access attach[ ]." (Emphasis added.) *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 7-9 (1986) (*Press-Enterprise II*) (further explaining that the application of the first amendment right of access depends on the substance of the proceeding rather than its label); see also *Zimmerman*, 2018 IL 122261, ¶ 28. Case law abounds analyzing different types of proceedings and records—the fact that a proceeding occurs or a filing comes before a court does not, in every case, end the inquiry. *E.g.*, *People v. Kelly*, 397 Ill. App. 3d 232, 259-60 (2009) (deciding that no right of access attached to juror questionnaires where questionnaires were not historically open and disclosure would undermine juror selection).

¶ 19    Stevens argues that the cases in which courts *have* examined a particular proceeding represent "exceptions to the general rule of openness *** unique to the criminal context." But courts examine specific proceedings or records in civil court as well. *In re Astri Investment, Management & Securities Corp.*, 88 B.R. 730, 736-42 (Bankr. D. Md. 1988) (applying the experience and logic test to determine the right of access to creditors' meetings in bankruptcy

proceedings); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-96 (2d Cir. 2004) (civil and criminal docket sheets); *Delaware Coalition for Open Government, Inc. v. Strine*, 733 F.3d 510, 515-21 (3d Cir. 2013) (rejecting the conclusion that "because a right of public access applies to civil trials," the right must also apply to court-led arbitrations and proceeding to apply the experience and logic test before granting access). And the general rule of openness in the civil context has its own exceptions. *In re A Minor*, 205 Ill. App. 3d 480, 488 (1990), *aff'd*, 149 Ill. 2d 247 (1992) (declining to extend the right of access to juvenile adjudicatory hearings regarding abused children taken into shelter care); *Cincinnati Gas & Electric Co. v. General Electric Co.*, 854 F.2d 900, 904 (6th Cir. 1988) (denying access to a summary jury trial conducted to facilitate settlement); *B.H. v. McDonald*, 49 F.3d 294, 299-301 (7th Cir. 1995) (holding that the right of access did not extend to in-chambers conferences held in civil proceedings to enforce a consent decree).

¶ 20 Clearly, not all records or proceedings are subject to the first amendment right of access. See *Zimmerman*, 2018 IL 122261, ¶ 27. Stevens argues for a blanket rule, citing cases that turned on the fact that a record had been filed with the court. *Skolnick*, 191 Ill. 2d at 214, 232 (holding that the counterclaim in a tort case became subject to the right of access upon its filing); *In re Marriage of Johnson*, 232 Ill. App. 3d 1068, 1074 (1992) (reaching the same conclusion as to a settlement agreement filed in a divorce proceeding); *A.P. v. M.E.E.*, 354 Ill. App. 3d 989, 991, 995 (2004) (same as to a private agreement filed in a declaratory action under the Probate Act of 1975 (755 ILCS 5/19-8 (West 2002)). But these courts considered the sealing of records in a single case against the backdrop of ubiquitous civil proceedings. Here, Stevens is arguing that a right of access attaches to all records in a particular form of civil proceeding, such that the provisions governing

them are void. Given this distinction, the general rule Stevens derives from these cases does not eliminate the need to examine the proceeding at issue. Neither the parties nor this court have discovered a case assessing the right of access to insurance conservation proceedings. See, *e.g.*, *McDonald*, 49 F.3d at 299 (applying the experience and logic test where the courts had not previously considered the type of proceeding at issue). We therefore apply the experience and logic test to decide the question.

¶ 21                                                    a. Logic

¶ 22     The State argues that access would undermine conservation by destabilizing an insurer as the Conservator attempts to ascertain its condition. Stevens contends that the possibility of damage to a viable insurer is mere speculation. The "logic" prong of the experience and logic test asks "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. Here, the process is an insurance conservation brought in chancery court by the Director of the Illinois Department of Insurance. Conservation is a form of insurance receivership governed by the Code along with rehabilitation, liquidation, and ancillary receivership. 215 ILCS 5/187(7) (West 2020).

¶ 23     The Code frames conservation proceedings as abbreviated and investigatory, explaining that the seizure order shall be in effect for only as long as is necessary for "the Director to ascertain the condition and situation of the [insurer]." *Id.* § 188.1(1), (2) (requiring that the circuit court terminate conservation "[a]s soon as practicable"); 9 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 99.09(1), at 99-56 (2023) (the conservator's function is to "investigate the financial problems of the insurer and make a determination as to what action, if any, is appropriate to address those problems"). Conservation aims to maintain conditions as they

are, so the conservator can get a clear picture of the insurer's condition and remove any hazardous conditions if possible. *Id.* § 96.03(3), at 96-23; *id*. § 98.01(3)(d), at 98-29; *In re Conservation of Alpine Insurance Co.*, 318 Ill. App. 3d 457, 458 (2000) (recounting that "[a]s conservator, the Director conducted an investigation to determine Alpine's financial condition"). The conservation might lead to rehabilitation or liquidation; alternatively, the grounds for either may prove not to exist or the hazards eliminated, in which case the circuit court terminates the conservation and returns control to the insurer. Thomas, *supra* § 96.03(3), at 96-23 (citing 215 ILCS 5/188.1 (West 2022)).

¶ 24    Thus, the question is whether public access would play a significant positive role in the conservator's ability to freeze conditions as they are and investigate an insurer's affairs. Logic confirms that disclosure would threaten these efforts. First, it would prompt customers to flee the insurer and creditors to rush to collect, lest the insurer collapse. An insurer that the Director might have guided out of conservation in stable condition would instead be hastened in its demise by a sudden drop in premiums. Courts, legislators, and regulators have cited concerns about customer flight when deciding whether to open proceedings related to insurer infirmity. For example, in 1967, the Wisconsin legislature enacted "the first comprehensive insurance receivership statute." Thomas, *supra* § 96.01 at 96-3. The Wisconsin statute contains a similar set of confidentiality provisions to Illinois's as to Wisconsin's process for regulatory seizure of an insurance company, the "summary proceeding." Wis. Stat. Ann. § 645.24 (West 2020) (requiring confidentiality as to all court records and, upon the insurer's request, hearings in summary proceedings). When enacting the Wisconsin provision, the legislature provided an introductory comment explaining that where summary proceedings were investigatory in nature, "public knowledge of the matter,

through the 'run on the bank' psychology, might destroy a sound insurer." Wis. Stat. Ann. § 645.24, Comment-1967 (West 2020). For this reason, Illinois and other states seal their respective forms of insurance conservation. See, *e.g.*, Colo. Rev. Stat. Ann. §§ 10-3-509(5), 10-2-510 (West 2020); Mich. Comp. Laws Ann. §§ 500.8110(5), 500.8111(1) (West 2020); Tex. Ins. Code Ann. § 443.051(f), (i) (West 2020).

¶ 25    The National Association of Insurance Commissioners, "an association of the insurance departments of the various States" (*Anderson v. Wagner*, 79 Ill. 2d 295, 317 (1979)), acknowledges that confidentiality "allows the receiver to assess the insurer's current status" and reduces risk of harm to an insurer's business. National Ass'n of Insurance Commissioners, Receivers' Handbook for Insurance Company Insolvencies 10 (2024), https://content.naic.org/sites/default/files/publication-rec-bu-receivers-handbook-insolvencies.pdf [https://perma.cc/Z7BJ-RLW4]. Courts have similarly weighed the possibility of "runs on the bank" when deciding whether to open or allow third parties to intervene in proceedings as to banks and insurance companies. See *Cohen v. State ex rel. Stewart*, 89 A.3d 65, 97 (Del. 2014) (affirming lower court's decision not to delay entry of order of rehabilitation of insurer to allow briefing on third-party intervention where "strong public policy reasons," including the threat of a "run on the bank," required swift action); *cf. In re EPIC Associates V*, 54 B.R. 445, 449 (Bankr. E.D. Va. 1985) (sealing the identity of savings and loan institutions, creditors of a debtor in bankruptcy, based on the "probability that there will be a run on the banks in this area should the information now under seal be disclosed"). None of the foregoing is conducive to an orderly or efficient conservation.

¶ 26    Second, disclosure undermines conservation by discouraging regulators from pursuing it.

The likelihood of damaging an insurer by filing a complaint for conservation can deter regulators from wielding it as a formidable yet provisional form of intervention. Wis. Stat. Ann. § 645.24, Comment-1967 (West 2020) ("The reason for not compelling disclosure of the summary proceedings is that if they were open, as a practical matter they probably would never be used."). Confidentiality creates more flexibility for the Director to pursue conservation, encouraging "early regulatory intervention, which provides a much better chance of the insurer's survival." Thomas, *supra* § 96.01(1), at 96-5. Public knowledge would not "play a significant positive role" in the functioning of conservation proceedings, where it would potentially disturb or worsen an insurer's condition and reduce the number of conservations going forward.

¶ 27    In response, Stevens argues that there has been no concrete assessment of how publicity would affect the actual proceeding at issue where NextLevel's largest creditor was the State of Illinois. Stevens misapprehends this court's role in deciding a question of facial invalidity. It is the threat to any or all insurance conservations that we must assess, not to this conservation in particular. See *People v. Thompson*, 2015 IL 118151, ¶ 36 (when deciding a facial challenge, "the specific facts related to the challenging party are irrelevant").

¶ 28                                  b. Experience

¶ 29    Stevens argues by analogy that the tradition of openness in bankruptcy proceedings establishes the same with respect to insurance conservation. She specifically relies on Rule 2004 examinations, " 'the basic discovery device used in bankruptcy cases.' " *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (quoting *In re French*, 145 B.R. 991, 992 (Bankr. D. S.D. 1992)); Fed. R. Bankr. P. 2004. At least one bankruptcy court determined that these examinations were traditionally public. *Symington*, 209 B.R. at 693-94; but see *In re Thow*, 392 B.R. 860, 866-67

(Bankr. W.D. Wash. 2007). The State draws on the history of insurance conservation proceedings post-Bankruptcy Act of 1898, which excluded domestic insurers from the Bankruptcy Code (see Thomas, *supra* § 96.01, at 96-3), and contends that conservations have been confidential since their creation by statute in Illinois.

¶ 30 The "experience" prong of the test requires that "the place and process have historically been open to the press and general public." *Press-Enterprise II*, 478 U.S. at 8; accord *Zimmerman*, 2018 IL 122261, ¶ 28. Analogy can assist where the proceeding in question is of relatively recent genesis. *In re Boston Herald, Inc.*, 321 F.3d 174, 184 (1st Cir. 2003) (considering but rejecting two proffered analogies to proceedings under a federal statute that did not exist until 1964). Insurance conservation did not exist in Illinois until 1967. 1967 Ill. Laws 1762 (§ 1) (adding the provision now found at section 188.1 of the Code).

¶ 31 Stevens invokes the history of access to Rule 2004 examinations and bankruptcy generally, since insurers could undergo bankruptcy until 1898. Thomas, *supra* § 96.0,1 at 96-3; see *Scammon v. Kimball*, 92 U.S. 362, 363 (1875) ("the insurance company was duly adjudged bankrupt"). Neither analogy bears weight. The purposes of a Rule 2004 examination "are the discovery of assets of the [debtor's] estate and the exposure of fraudulent conduct." *Symington*, 209 B.R. at 684. The Director has no need for a discovery device as to the insurer to uncover its assets in conservation. At the outset, she "take[s] possession and control of the property, business, books, records, and accounts of the company, and of the premises occupied by it for the transaction of its business." 215 ILCS 5/188.1(1) (West 2020). Nor does an estate form in conservation; the Code only allows the creation of "an estate that comprises all of the liabilities and assets of the company" upon entry of an order of rehabilitation or liquidation. *Id.* § 191. Further, the Director may seek

conservation based not only on financial irregularities but on corporate malfeasance or a failure to maintain records sufficient to assess the insurer's financial condition. *Id.* §§ 188(3), (7), 188.1(1) (the Director may seek conservation if any conditions exist that would justify an order for rehabilitation or liquidation); *People ex rel. Bolton v. Progressive General Insurance Co.*, 85 Ill. App. 2d 427, 433 (1967) ("[R]ehabilitation is not limited to instances of financial irregularities.").

¶ 32    Ultimately, conservation is a powerful form of administrative, regulatory oversight, a function not shared by bankruptcy. It is an action brought *ex parte* by a state regulator to seize an insurer for the protection of policyholders and the public pending further investigation, not a private action brought by a debtor or its creditors to address a debtor's troubled financial condition. See *People ex rel. Benefit Ass'n of Ry. Employees v. Miner*, 387 Ill. 393, 400 (1944) (differentiating an action to obtain an accounting from an insurer under the Code from a typical stockholder derivative suit because "[i]nsurance companies, being engaged in a business charged with the public interest, and being the especial objects of the care and supervision of the State, present a different question"). We are therefore not persuaded that a tradition of access to bankruptcy warrants extension of the right of access to insurance conservations.

¶ 33    Stevens contends that the provisions' existence since 1967 in this and other states does not establish its constitutionality. But, the analogy to bankruptcy having failed, the nascent history of conservation itself is all that remains, and the practice of closure among several states counsels against a determination that there has been a sufficiently strong tradition of access such that the first amendment presumption attaches. *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150-51 (1993) (relying on the "established and widespread tradition of open preliminary hearings among the States" to find a tradition of access); *In re Reporters Committee for Freedom of the*

*Press*, 773 F.2d 1325, 1336 (D.C. Cir. 1985) (failing to "discern an historic practice of such clarity, generality and duration as to justify the pronouncement of a *constitutional rule*" (emphasis in original)).

¶ 34    Having decided that no first amendment right of access applies to insurance conservation proceedings, we need not decide whether "closure is essential to preserve higher values and is narrowly tailored to serve that interest." (Internal quotation marks omitted.) *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)); *Kelly*, 397 Ill. App. 3d at 256 (holding that the common law right of access and the first amendment right of access are properly analyzed together, and if the presumption of access does not apply, analysis "ends there").

¶ 35                                    2. Overbreadth

¶ 36    Stevens also argues that the confidentiality provisions are unconstitutionally overbroad. The State contends that Stevens forfeited this argument. Stevens does not assert that she ever raised overbreadth before the circuit court, and our review of the record revealed no discussion of the issue. Generally, an appellant forfeits on appeal any issues not raised before the circuit court. *Haudrich*, 169 Ill. 2d at 536.

¶ 37    Nevertheless, on the merits, Stevens's overbreadth argument fails. A statute is unconstitutionally overbroad if its challenger demonstrates that "a substantial number of its applications to protected speech are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Haywood*, 2018 IL App (1st) 180003, ¶ 15. The confidentiality provisions do not implicate the first amendment right of access such that they might violate the first amendment in a substantial number of cases. Further, Stevens does not invoke

overbreadth where she attacks the confidentiality provisions only as to her or as they would apply to anyone based on their plain language. According to Stevens, the confidentiality provisions have no legitimate sweep, and she has not shown that they are unconstitutionally overbroad.

¶ 38                    3. Prior Restraint and Subsequent Punishment

¶ 39    Stevens next argues that the circuit court's refusal to vacate its seal and redaction order operates as a prior restraint because she could be liable for contempt of court if she publishes the sealed records' contents. NextLevel contends that Stevens offers only inapposite authority that does not speak to whether the seal and redaction order constituted a prior restraint. We review this legal question *de novo*. See *XLP Corp. v. County of Lake*, 359 Ill. App. 3d 239, 243 (2005).

¶ 40    A prior restraint is a " 'predetermined judicial prohibition restraining specified expression.' " *In re A Minor*, 127 Ill. 2d at 264 (quoting *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 248 (7th Cir. 1975)). Such restraints represent "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Stevens's motion to vacate targeted all orders that denied her access to records. As discussed, the first sequestration order sealed and sequestered the proceedings and went on to restrain disclosure of records and facts related to the proceedings or NextLevel.

¶ 41    Following the State's motion to vacate, the circuit court entered an order requiring that two exhibits in support of the member transfer agreement "remain under seal" and that the complaint and conservation order be released with redactions. In its June 13, 2022, order, the circuit court clarified that it retained those items under seal specifically pursuant to the confidentiality provisions in the statute rather than pursuant to its inherent powers. The confidentiality provisions do not include an affirmative prohibition on disclosure or any proposed penalties for violating a

seal. 215 ILCS 5/188.1(4), (5) (West 2020). The circuit court did not reference the prohibition on disclosure in the order sealing and redacting the records and later reiterated its reliance on the statute. Thus, the seal and redaction order shed the prohibition on disclosure.

¶ 42     The next issue, then, is whether the circuit court's order maintaining certain documents under seal creates a prior restraint on Stevens by potentially exposing her to liability for contempt if she publishes them. Stevens provides no cases on-point in which a court determined that, in the absence of any prohibition on speech, a court order was nevertheless an unconstitutional prior restraint. Instead, she relies on a case in which the order expressly forbade extrajudicial statements. *In re Murphy-Brown*, *LLC*, 907 F.3d 788, 792, 797 (4th Cir. 2018) (holding order prohibiting parties, lawyers, and all potential witnesses from "giv[ing] or authoriz[ing] any extrajudicial statement or interview to any person or persons associated with any public communications media" (internal quotation marks omitted) was an unconstitutional prior restraint).

¶ 43     It is true that "[a] threat of prosecution or criminal contempt against a specific publication raises special First Amendment concerns, for it may chill protected speech much like an injunction against speech by putting that party at an added risk of liability." *Multimedia Holdings Corp. v. Circuit Court of Florida*, 544 U.S. 1301, 1304 (2005) (Kennedy, J., in chambers) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("Threatening penalties for future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation."). But in these instances, the courts were examining orders or acts that, in and of themselves, curtailed speech on threat of legal action or punishment. The order in this case retains records under seal; it does not forbid speech. *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 382 (7th Cir. 2009) ("The term prior restraint describes

administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." (Emphasis in original and internal quotation marks omitted.)); *McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015) (explaining that the term "prior restraint" is synonymous with "censorship"). The risk of contempt for violating a court order, however, does not transform a seal order into a prior restraint. *Citizens United v. Schneiderman*, 882 F.3d 374, 386 (2d Cir. 2018) ("If the special opprobrium prior restraints have received since the 17th Century is to maintain its force, we must guard against the doctrine's thinning by overextension.").

¶ 44    Prohibition on publication or not, NextLevel and Stevens each posit that Stevens could be subject to contempt if she publishes the information still under seal. Stevens argues that the State cannot punish her for publishing information she lawfully obtained, while NextLevel contends that Stevens did not obtain the records lawfully. In addition to prior restraints, the first amendment protects against subsequent punishment for publishing truthful, lawfully obtained information. *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103-04 (1979). At present, Stevens has not been held in contempt, nor has any accompanying sanction been levied against her. Thus, any decision on the constitutionality of her being held in contempt would be advisory. See *In re Marriage of Buchmiller*, 135 Ill. App. 3d 182, 185 (1985) (explaining that appeal of a contempt order was premature where no sanction had yet been imposed).

¶ 45                    C. Additional Constitutional Challenges

¶ 46                    1. Equal Protection and Special Legislation

¶ 47    Stevens raises four additional constitutional challenges to the statute and to the proceedings below. As to equal protection, Stevens argues that the circuit court discriminated against her based

upon her status as an intervenor in the conservation where she, as opposed to the public, cannot disseminate unredacted records. NextLevel responds that Stevens is not similarly situated to the general public as an intervenor. "Equal protection requires that similarly situated individuals will be treated in a similar manner." *City of Chicago v. Alexander*, 2015 IL App (1st) 122858-B, ¶ 50; accord U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. Equal protection applies not only to statutory classifications but to the administration of laws. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 430 (1996). Here, the circuit court's decision not to vacate the seal does not differentiate between Stevens and the public—the circuit court sought to seal the records for all. Stevens's status as intervenor does not change the nature of the circuit court's general order into one targeting Stevens.

¶ 48     Stevens also contends that the confidentiality provisions themselves violate the special legislation clause of the Illinois Constitution. Stevens argues that the statute permits a private corporation to access information from the conservation proceeding while the public cannot. Similarly, insurance companies receive a benefit in the form of protection over their records that other companies do not. The State argues that Stevens forfeited the issue by not raising it below, and she concedes that she did not raise it. Even if Stevens had not forfeited the issue on appeal (*Haudrich*, 169 Ill. 2d at 536), her argument fails on the merits.

¶ 49     The special legislation clause requires that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. It "prohibits the General Assembly from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated." *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 325 (2005) (explaining that a special legislation challenge is typically reviewed "under the

same standards applicable to an equal protection challenge"). If the targeted legislation does not implicate a suspect class or interfere with a fundamental right, we must determine whether "the classification it establishes is rationally related to a legitimate state interest." *Id.*

¶ 50    Stevens draws a comparison between the statute's treatment of insurers, as opposed to the public or other businesses, but neither the public nor businesses in general are a suspect class. See *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (explaining that a suspect class either has certain immutable characteristics or has been historically subjected to intentional unequal treatment or political powerlessness). To the extent the right of access is a fundamental right, we have already determined that it does not extend to insurance conservations. A rational relationship clearly exists between the classification of insurers by the Insurance Code and the legitimate state interest of regulating them, and the confidentiality provisions therefore are not unconstitutional special legislation.

¶ 51                                    2. Due Process

¶ 52    Stevens next argues that the confidentiality provisions deprive her of her right to access court records under the Clerks of Courts Act (705 ILCS 105/1 *et seq.* (West 2020)) without any opportunity to challenge the deprivation. The State again contends Stevens forfeited this argument. In the alternative, the State argues that the confidentiality provisions superseded the relevant provision in the Clerks of Courts Act and that the Act does not create a protected interest where access is subject to circuit court discretion.

¶ 53    The State may not deprive a person of life, liberty, or property without due process of law. U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. We begin by determining "whether a life, liberty, or property interest exists that has been interfered with by the state." *Cathedral Rock*

*of Granite City, Inc. v. Illinois Health Facilities Planning Board*, 308 Ill. App. 3d 529, 539 (1999). State law can be the source of a protected interest. *Paul v. Davis*, 424 U.S. 693, 710 (1976). However, where a government official may exercise discretion in granting or denying a certain benefit, that benefit is not an interest entitling its recipient to process. See *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 759-61 (2005) (holding that a statute requiring police to use "every reasonable means" to enforce restraining order did not create a protected property interest where police had discretion as to how to enforce the law).

¶ 54    The Clerks of Courts Act, which requires the clerks of the circuit court to make court records open to public inspection, creates a "statutory right of access" to court records. *Kelly*, 397 Ill. App. 3d at 242 (citing 705 ILCS 105/16(6) (West 2008)). However, the access provision does not abrogate the circuit court's inherent powers to control and impound its records. *Deere & Co. v. Finley*, 103 Ill. App. 3d 774, 776 (1981). Any interest derived from the Clerks of Courts Act is not constitutionally protected where a judge retains inherent authority to deny access by impounding records. *Cathedral Rock*, 308 Ill. App. 3d at 539 ("If no [protected interest] is present, no process is due.").

¶ 55                                3. Separation of Powers

¶ 56    Stevens further argues that by requiring closure at the outset of conservation proceedings, the confidentiality provisions violate separation of powers principles under the Illinois and United States constitutions. "[T]he separation of powers principle is violated when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or directly and irreconcilably conflicts with a rule of [the Illinois Supreme Court] on a matter within the court's authority." *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997); Ill. Const. 1970, art. II, § 1 ("The legislative,

executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."). While Stevens identifies no supreme court rule with which the confidentiality provisions conflict, she refers in other sections of her brief to the court's inherent power to control its records. As discussed, circuit courts have an inherent power to control court records, including by sealing them. *Deere*, 103 Ill. App. 3d. at 776. However, the statute's mandatory seal does not unduly encroach on that power where it mandates sealing only until "the court, after hearing arguments in chambers from the Director and the company, shall decide otherwise." 215 ILCS 5/188.1(5) (West 2020). Stevens's argument as to the court's inherent power to seal records is unavailing, given the plain language of the confidentiality provisions.

¶ 57    Subsection 4 seems to require the circuit court to hold hearings in chambers at the insurer's request. *Id.* § 188.1(4) ("The court may hold all hearings in conservation proceedings privately in chambers, and shall do so on request of any officer of the company proceeded against."). Again, Stevens cites no supreme court rule with which the statute conflicts. As to whether subsection 4 unduly encroaches on the circuit court's inherent powers, Stevens states generally that the confidentiality provisions conflict with a judicial rule of procedure.

¶ 58    "[T]he legislature, which is vested with the power to enact laws, may also enact legislation which governs judicial practices, as long as it does not *unduly* infringe upon the powers of the court." (Emphasis in original.) *People v. P.H.*, 145 Ill. 2d 209, 223 (1991). Insurance conservations exist in Illinois by legislative mandate to exert regulatory control under judicial supervision—clearly, insurance oversight is an area in which the three branches of government play complementary roles. See 1967 Ill. Laws 1762 (§ 1) (adding the conservation provision now found at section 188.1 of the Code). Further, provisions that exist to refine a procedure created by statute

have repeatedly been found not to violate separation of powers principles. See, *e.g.*, *P.H.*, 145 Ill. 2d at 218, 223 (rejecting separation of powers challenge to provision in the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, ¶ 805-4(3.1)), requiring a court to permit prosecution of juveniles under criminal law in specified circumstances where the Act was "a purely statutory creature whose parameters and application are defined solely by the legislature"); *Strukoff v. Strukoff*, 76 Ill. 2d 53, 61 (1979) (rejecting a separation of powers challenge to a provision in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, ¶ 403(e)) where dissolution was "statutory in origin and nature" (internal quotation marks omitted)). Considering the "strong presumption of constitutionality" that "attaches to any legislative enactment" and the heavy burden borne by a statute's challenger (internal quotation marks omitted) (*In re S.G.*, 175 Ill. 2d 471, 486 (1997)), Stevens has not shown that the confidentiality provisions unduly intrude upon courts' inherent powers.

¶ 59                                III. CONCLUSION

¶ 60    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 61    Affirmed.

No. 1-23-0803

---

***In re Conservation of NextLevel Health Partners***, 2025 IL App (1st) 230803

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-CH-4431; the Hon. Pamela McLean Meyerson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Christina Abraham, of Abraham Law and Consulting, of Chicago, and Nicolette Glazer, Esquire, of Century City, California, for appellant. |
| | Jacob H. Huebert, Jeffrey M. Schwab, and James J. McQuaid, of Liberty Justice Center, of Austin, Texas, also for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for appellee the People *ex rel.* Severinghaus. |
| | Stephen W. Schwab, Ana O. Condes, and Rivka V. Reichman, of DLA Piper LLP (US), of Chicago, for other appellee. |